Cases No. 05-1486, Former Employees of Quality Fabricating against the United States Government. United States Secretary of Labor, Mr. Tersini. May it please the Court. The Court of International Trade committed three reversible errors in this case. First, the Court of International Trade asserted jurisdiction over the administration of a secondary benefits determination that's simply not included in the relevant statute. Second, the plaintiff's notice claim, the claim that they did not receive adequate notice of an affirmative secondary determination which provided all the benefits to the plaintiffs that they could ask for from the Court of International Trade, that notice claim was removed. And third, the trial court issued an impermissible injunction directing the entire United States government to track down numerous former employees and to conduct activities that are nowhere envisioned in the Labor Department's guidance, regulations, or statute. Mr. Tersini, can I ask you as a threshold matter, and maybe the other side is in a better position, the plaintiffs here, the former employees, does that include, I mean, I don't know if we know the number, but what portion of the group of people who are potentially affected by this, the former employees of Quality Fabricating, are plaintiffs in this case? Under the statute, all of the former employees, all individuals who were separated from their employment with the subject company during a set period of time, they are all plaintiffs. However, the way the administration of the statute works is that after the employees are separated, they apply for unemployment benefits. And these benefits, TAA benefits, are among all the benefits that are provided for by the state under its own unemployment compensation scheme. And in this case, all of the plaintiffs have been fully eligible to receive all of the exact same benefits that are available to a primary worker group. However, that was a discretionary decision by the executive branch at the time that the NAFTA Implementation Act was passed, that these additional workers would be allowed to receive benefits. Mr. Tersini, during this period between the judgment below and this appeal, has there been any action in attempting to find those former employees whose address is incorrect? Up until the court issued its injunction, the Department of Labor did attempt to contact as many employees as it could and held a meeting. The rest of the United States government did not attempt to track down every employee, including those whose addresses were incorrect, no. And that's because the trial court's order was enjoined by this court. With respect to the question, I guess this is part of jurisdiction, where there's an argument about the JTPA or whatever it's called, the WIA, whatever it's called now, I think the other side makes an assertion, I may be wrong, that that just goes to the source of funding. But it doesn't, I mean, whether or not these benefits are under JTPA, under the SAA, or whether or not they're under the statute for primary, that the only difference with respect to those under the WIA program is the source of funding, not procedures, not who administers, not how it's administered, etc. Is that correct or not? It's, to some extent, in that the benefits, the receipt of benefits, is going to be transparent to the worker, whether they're receiving benefits under WIA, which is a grant program that the federal government administers and grants money to the states, and the TAA program. However, the important fundamental difference here is that the TAA program is provided for in a specific statute in 19 U.S.C. 2273, identifies the relevant criteria, and only determinations of the Secretary of Labor under that statutory provision are reviewable by the Court of International Trade. And there's no indication anywhere, in any statute, even in the SAA, which the plaintiffs cite, that Congress intended that plaintiffs could bring an action in the Court of International Trade challenging a secondary benefits determination. In fact, Congress elected not to provide secondary benefits under the NAFTA Implementation Act. There's got to be a sovereign immunity waiver here, right? Yes, Your Honor. Under this Court's decision in NEC... And that's got to be express, explicit, neon lights, all of that sort of thing, right? Yes, Your Honor. There's a long line of cases in this Court. And in fact, the case that's most on point would be the NEC case, 806 F. 2nd at page 249, where this Court made clear that it's not only that there need be a general waiver of sovereign immunity, the waiver of sovereign immunity has to apply to a specific court. And in this case, it's simply not the Court of International Trade that would hear secondary benefits claims. Where can these workers appeal their benefits certification decisions? I know they can go to the state court for the calculation of amounts, but what about the certification decisions? Certification decisions, the plaintiffs could go to the local district court. The Hampton v. Butler case, which occurred in Pennsylvania in the same place that these plaintiffs are located, involved just that issue, where the Third Circuit decided that certain guidelines of the Department of Labor were reviewable under... The Job Training Act. The Job Training Partnership Act. So certification under that would be available in a district court? Yes. Did the government ask for transfer or removal to a more appropriate forum? No, Your Honor, we did not, because up until the summer of 2005, there still was a justiciable claim before the trial court. Specifically, before the trial court, there was also a claim concerning primary benefits. The plaintiffs had asserted that labor wrongly denied TAA benefits to the workers as primarily affected workers. And also the plaintiffs, in midstream in this litigation, added an allegation that labor had provided insufficient notice of the secondary benefits determination to the plaintiffs. Why does that matter? Your whole premise here is that you do bifurcate secondary and primary. The argument here is that the secondary should have gone elsewhere for adjudication, but the primary stay here. That's correct. So why wouldn't you, as Judge Newman was asking, necessarily remove the secondary, whether or not the primary is still alive or not? Well, we did move to dismiss the secondary claim on the basis of a lack of subject matter jurisdiction, and the court denied our motion. And we, later on, after our first motion, brought Kent v. Butler to the court's attention, which was issued in 2004. However, the court denied our motion, and that's part of what is under appeal in this case. In QFI-2, which is attached to our addendum, is the court's opinion concerning jurisdiction. And it based its jurisdiction over the secondary benefits claims solely upon the Court of International Trade's expertise in international trade matters. The court never cited a specific statute that confers jurisdiction to the trial court to address secondary benefit claims. Let me ask you about another matter. In the order, I know all of the briefing in this case deals with the notice requirements and what the Court of International Trade judge is requiring of the government there. But paragraph three of the order says that they'll provide all secondarily affected workers benefits. And then it seems to require some sort of retroactivity, arguably.  Does that, in your view, mean that the Court of International Trade is going to have continuing enforcement authority with respect to the provision or non-provision of benefits, in terms of the amount, etc.? On the face of the order, the Court of International Trade, further along in the order, yes. The Court of International Trade, further along in the order, stated that it's demanded that the government also provide independent administrative records for each individual benefit determination for the court to address. The court never stated that it would review those records under any particular standard. However... But doesn't the order seem, I mean, don't you read the order as requiring that you provide these benefits and that proper notice at the time, without any limitation, changed to a reduction of benefits? I mean, I was a little confused as to why the government was spending all of its time arguing about the notice requirements when it seemed to me that this requirement in the order is pretty, you know, significant. That requirement, yes, it's very significant. It all goes to the fact that the order is an impermissible injunction, which is specifically made impermissible under 28 U.S.C. 2643 C.2. And we did address that in our brief. However, we also made clear that the secondary benefit issue, there's simply no waiver of sovereign immunity to even hear this case. And additionally, the court did overstep its authority. But wasn't it properly, nonetheless, before the Court of International Trade, on some theory of at least pendant jurisdiction? We've held all along that if jurisdiction is proper in the first instance under the complaint, that the court can then decide the issues rather than split it on appeal if some of the issues fall out. Well, the one issue over which the trial court possessed jurisdiction was the primary benefit determination. Yes, exactly. And the plaintiffs abandoned that claim. After the court denied our motion to dismiss where we alleged that the plaintiffs had abandoned that claim, in a hearing, the plaintiffs explicitly abandoned that claim. But if, in fact, it was there? If you run a false, if you abandon a patent claim, you lose all patent jurisdiction, don't you? You're not going to know that. I'm not familiar with that case, but I'm not surprised. That's okay, we do. We know it. And yes, once you abandon your patent claim, it goes someplace else. Well, it depends on whether it's abandoned before decision, at what stage, whether it was really there to manipulate jurisdiction, or whether it was dropped, essentially, from the pleadings at an early stage. Well, in this case, the odd procedural posture in this case is the result of a lot of things. But to put it very simply, with respect to the primary benefits determination, we asked for a voluntary remand early on in proceedings. We asked the trial court to send this back to labor, and the Department of Labor would either reaffirm its initial determination, which meant providing secondary benefits to the plaintiffs, or provide benefits under one or both programs. That's in our motion for a voluntary remand, which is contained in the joint appendix. We asked the court to simply let the Department of Labor fix any problems that there might be. Well, it didn't happen, right? It did not happen. The plaintiffs opposed our motion for voluntary remand. So let's look at what we have before us. Yes, Your Honor. Can I just ask you about the mootness, which was one of the basis, the alternative basis that you're asking us? Why was it? I mean, there was a delay here in the Federal Register notice. I mean, the government mistakenly told these people in the Federal Register within the timeframe that they weren't entitled to benefits, and then some significant amount of time elapsed before the government eventually put the Federal Register notice in, telling the employees that they were entitled to secondary benefits. Am I correct about that? Yes, Your Honor. So why, assuming a court, this court or some other court, had jurisdiction over the issue, let's assume there is jurisdiction, why wouldn't it be appropriate that in an instance where there is some defectiveness in the original notice, that something more than just, okay, publish it now two years later, but you don't have to do anything else, why is it requiring something more than that appropriate? If the court possessed, it would be appropriate if the court possessed jurisdiction. Okay, I just, okay, exactly. So your argument with respect to mootness isn't completely independent. In other words, if we were to find jurisdiction, then mootness on its own wouldn't get rid of this case, correct? No, that's not correct, Your Honor, because it's not only the fact that the Department of Labor published notice in the Federal Register. There were numerous other times when the plaintiffs received notice. In fact, they received actual notice through their counsel. We notified counsel of the names of all the employees who had sought unemployment insurance. There were a number of other occasions where the fact that plaintiffs were entitled to receive secondary benefits, where that fact was conferred to the employees. Okay, so you're not arguing it's moot simply because you ultimately put the notice in the Federal Register. You're saying that coupled with other things makes sense. That alone may not be enough. However, in conjunction with all of the other things that occurred, which we identified in our brief, there's an overwhelming amount of information demonstrating that the plaintiffs received actual notice. Let's hear from the other side, Mr. Tresini. Thank you. Mr. Gordon. Good morning, Your Honors. Adam Gordon, on behalf of the Plaintiffs' Appellees, former employees of the Quality Fair Committee, and I'm here with my colleague, John Drew, this morning. May it please the Court. I listened with great interest to the presentation Mr. Tresini just gave, and there were a number of extraordinary characterizations of the record of evidence that I think are important to correct initially. Let's just get the jurisdiction to start right out with. Where is your jurisdiction? Well, Your Honor, we feel that the Court of International Trade properly read the relevant statutory provisions to find jurisdiction under 1581D. Where could it have any jurisdiction under the Trade Act when soft benefits arise under a Job Training Partnership Act? What kind of benefits, sir? How could there be any jurisdiction arising under trade-related matters, over which the CIT does have jurisdiction in 1581, but how can that give them any jurisdiction over the Job Training Partnership Act? Because Your Honor, the substantive right and the procedures and the entitlement to receive these benefits does not arise under the JTPA or the WIOA, which is its successor. But you have to have an explicit sovereign immunity waiver. You have to have an explicit intention expressed in clear language, neon lights flashing, that the government will be sued in the Court of International Trade on soft benefits. Where is that? Well, Your Honor, firstly, I would say... They'll be sued. They'll be sued in the district courts. I don't sort of agree with that, Your Honor. Well, the Third Circuit disagrees with you, right? I respectfully disagree with the Third Circuit. Well, we're going to probably take consideration of what our sister circuit says, but in any event, it isn't in the Court of International Trade, is it? Yes, it is, Your Honor. Well, where is it then? Where does the Congress say you may sue for SAW certification issues in the Court of International Trade? It has to be in that language. Well, with all due respect, Your Honor, I think that, firstly, I will demonstrate to you the correct statutory basis. Secondly, however, I think that the extremely narrow reading of what it takes to determine a waiver of sovereign immunity that has been advanced by the Department of Labor has been somewhat altered by the Supreme Court of Jurisprudence as well as the decision of this Court, the West v. Gibson Insurance Company in the West cases, which we briefed in our briefs. Now, with respect to arriving at the Court of International Trade under 1581, as part of this exclusive authority over trade-related matters, the Court of International Trade has jurisdiction over trade adjustment assistance programs. At the relevant time in question, those programs were found both in the Trade Act of 1974 provisions as well as in the NAFTA Implementation Act provisions. Section 2395... But the authority for SAW doesn't come from NAFTA, does it? It comes from the Job Training Partnership Act. With all due respect, Your Honor, I think that misreads the... Where are the SAW benefits found? The benefits themselves? Yeah. Funding for the benefits is found within the JTPA. Funding is very different from the actual entitlement to obtain... Well, where is the entitlement, then, for secondary benefits? Where is the entitlement? Sorry, Your Honor. It is first described in the Statement of Administrative Action accompanying the NAFTA Implementation Act. Now, the next important step is that Congress explicitly approved the SAA and thus brought it within the scope of the NAFTA Implementation Act in 19 U.S.C. 3311. The next step is Congress then directed the Department of Labor to issue regulations effectuating the programs described in the Statement of Administrative Action in 3314. Now, the Department of Labor never issued those regulations despite having a deadline to do so. What they did, though, in contrast, was issue several sets of internal procedures and guidance which specified exactly how the secondary effective benefits would be provided. If you look at the SAA itself, it says, first, you have Sections 501 through 506, which are NAFTA. Those arise under the Trade Act. Then it goes, second, through Administrative Action, the Secretary of Labor will use existing authority under what? The Job Training Partnership Act to provide assistance to workers in secondary firms. It separates out NAFTA, Trade Act, Court of International Trade Jurisdiction, from Secondary Benefits, Job Training Partnership Act, District Courts. I mean, it's very clear in the SAA itself. Well, with all due respect, Your Honor, I think you need to read the SAA a little bit more broadly. I'm reading from it. If you look at the description. I'm reading SAA at page 672. The descriptions that you just read describe two components of one unified program of trade adjustment assistance which was intended to be provided through the Administrative Action and then which was actually effectuated by the Department of Labor after being adopted into the NAFTA Implementation Act through 3311 with direction to issue regulations under 3314. What does it mean, adopted into? It's not part of the statute, correct? The Congress explicitly approved the SAA. That doesn't mean, I mean, are you equating Congress approving an SSA to incorporating all the terms of that SSA, making that a statutory provision? I wouldn't do that based solely on the approval, although I think there is no question that an SAA is not simply legislative history. It has to be done. Okay. So on what basis do you think that we are required to construe the SSA as being a statutory provision? Well, the fact that the Congress then took the next step of mandating that the Department of Labor would promulgate regulations to effectuate the programs described in the SAA in 3314. So that automatically makes the provisions and the requirements and everything in the SSA, it conforms them to become, they become a statutory requirement, statutory provision? I wouldn't necessarily go that far. Well, don't you have to go that far if you're going to? You've got to have a sovereign immunity waiver somewhere. Your Honor, I think you do have a sovereign immunity waiver, firstly, with respect to the language provided in 2395. Even if there is jurisdiction, how do you justify the terms of this injunction, ordering not just the Department of Labor but all government resources to organize a meeting? We in the judiciary get upset when the executive tells us what we have to do, but here we're telling them that they have to organize a meeting and then go on a worker-specific basis, determine benefits, which is, by the way, entirely a state issue. The government doesn't get, the federal government doesn't get involved in that. Why isn't each one of those three provisions completely ultra-virus? Your Honor, with respect, let me take this in reverse order. With respect to the determinations, there was never an intent, and it was understood by all parties, including Mr. Giussini, that that was not what was ordered. If you read the language, it does not order that specific benefits and awards to be given. It orders that the Department of Labor accept their applications. There's no question about certification because that was already given. In other words, they accept the applications and give them the benefits to which they would have been entitled. The Department of Labor then, in this discretion, goes through the programs and determines what benefits the workers should get. If it's none, then it's none. If it's everything, then it's everything. That was understood, in fact, as we briefed in our papers. That was understood at the hearing, in a colloquy with the court. And if Mr. Giussini or the Department of Labor... Deal with the other two. Sorry? I've read the terms. The terms seem a little bit broad and a little bit broad. With respect to a meeting. Grossly broad, but go ahead. With respect to a meeting, that is exactly the type of activity that the Department of Labor has done in other cases for employees of Tyco Electronics, a case in which Mr. Giussini... Isn't that up to the discretion of the Department of Labor to do? Is the Judiciary Department to tell the Labor Department how they're to run their business? I think, Your Honor, this Court of International Trade sits in law inequity. Sitting inequity under the circumstances of this case. The types of relief that were provided in this order are entirely... I could see the court saying, undertake appropriate legal steps to ascertain certification. That's the issue. But ordering meetings, ordering them on a worker-specific basis, to provide a detailed evaluation and determination, such determination is a state issue. And what about all the governmental resources? Again, Your Honor, at the hearing, it says reasonable. And at the hearing, the court discussed with counsel, in response to questions from counsel, what is meant by reasonable, and explicitly said, in response to an example, from counsel to labor, well, Your Honor, we're concerned about a situation in which we have to spend $10,000 to attract another worker. The court said, Mr. Giussini, I wouldn't say that is reasonable. But what I want you to do is do what's reasonable. That's what I'm going to order. And if you have questions about what's reasonable, you confer with opposing counsel. And if you can't agree on it, then you come back to the court. That's never happened. But they would have authority. But if you challenged, I mean, if they did something they thought was reasonable, and you challenged that, you could file contempt proceedings, right, under the order? Well, the court itself said, I don't anticipate seeing contempt proceedings. Well, maybe that was just wishful thinking. I mean, I don't know how to construe that, if he doesn't anticipate it. The question is, if you would be able to, I mean, did the court retain authority to entertain contempt proceedings, if, in fact, you alleged, and it determined, that what the Labor Department was doing in that regard was not reasonable? Well, I think, certainly, the court does retain the ability to use its contempt powers. But it would have to be in an appropriate case. And that was actually stated by the court. It would have to be an egregious case. Just like in any situation where contempt is a possibility, it is rarely used appropriately so. Anything else you need to tell us? Yes, Your Honor. If I may make a couple of clarifying points. Once they gave notice, why wasn't that issue substantially moved from there on out? Well, firstly, the Federal Register notice that was published, was published 16 months after another Federal Register notice had been published. At least I know the facts. Why didn't it move from there? Because it's only one of six types of notice that are required, the other five of which were not given at all, or which were not properly given. This one Federal Register notice alone does not fulfill the requirements that the Department of Labor itself has set forth that it should uphold. So to claim that publication of a Federal Register notice moves that issue is unfounded on this record and in law. Secondly, with respect to abandonment, let me say it very clearly. We have never abandoned any claims before the Court of International Trade. We briefed two claims in the alternative on the record of this proceeding. One concerning the failure of the government to give notice that the worker group had been certified as eligible to receive benefits as a secondary worker group. The second concerning the lack of substantial record evidence supporting their negative primary determination. Because the relief for each claim is identical, it's not simply transparent to the worker, it is identical in terms of the petition being accepted, being considered, the certification notice, and the benefits being awarded, apart from funding. Because it's identical, if we receive relief based on our first claim concerning the failure of notice as certification as a secondary group, you don't need to get to the second claim. We haven't abandoned it, and we've pledged it in the alternative. So is there a claim still pending at the Court of International Trade? Absolutely there is. That has never been abandoned. And the quotation presented by counsel is taken out of context. If you read the record as a whole, you will see repeatedly that we have identified that claim as being presented in the alternative. It has never been abandoned. It remains live. And even if this Court were to find that the Court of International Trade doesn't have jurisdiction over the secondary claim, it's going to go back on the primary claim, and they've already conceded the record doesn't support that.  It's because we don't want to get into a situation where this labor group is suddenly going to say, oh, workers, you can get benefits from this time forward, but since your separation date was six years ago, or because you're already employed, sorry, you don't get anything. This group was certified to receive benefits and should have been told as such, and then made eligible to receive those benefits more than almost five years ago. Yeah, but what has that got to do with, I thought you were talking about  Well, it is still pending, Your Honor. And there are two claims presented in the same complaint, and they exist independently, and they're presented in the alternative properly so. It's never been abandoned. And we strongly contest any representation to the contrary. Well, really, just to pursue this thought, they were presented in the alternative. So do we really have a final judgment when it became apparent that the second claim was, well, I guess that's right. If the second claim was decided in your favor, then you didn't really have to pursue the first, I suppose. Did you ask Judge Wallach to decide the primary claim also? In the order, Your Honor, it does rule in our favor on the motion for judgment, which includes both claims. And, in fact, that is consistent with the admission made in the respondents, our 56-2 response brief at the CIT, where they conceded, in an extraordinarily clear, concise statement, they conceded that the right does not support the negative primary certification claim. Wait, so you're saying the order is not, I mean, the order talks about secondary benefits, not primary, right? I mean, I read it as applying Well, the order says the motion for judgment is granted. Right. But then the specifics of the order only talk about certification of secondarily affected employees. Are you reading the order as also applying to primary employees? Well, they're the same, Your Honor. Well, it makes a difference to us, arguably, because there's a question of jurisdiction here, which is predicated on a difference between primary and secondary. So it does make a difference. Well, it rules in our favor. It grants our relief as to both claims right there. The motion for judgment upon the agency record is granted, the first paragraph. You're saying the beneficiaries are the same, even though the order says only secondarily affected. Well, the order only discusses in detail secondarily affected because that was the primary basis on which relief was forthcoming, and that's because the secondary claim didn't require any revisitation of the issue of certification, as opposed to the primary claim where they initially ruled in the negative, and to revisit that would require remanding the agency to gather additional evidence. I thought you said in passing just a few minutes ago that there referred to the potential for some dispute over the amount of back pay, if any, that these employees might ultimately be eligible for or receive, correct? That is correct. Well, that's the point I was getting to earlier. Do you read the order as contemplating that the court is retaining jurisdiction over enforcing or making a determination with regard to that aspect of the benefits, whether they're sufficient, whether they're a correct award of benefits? No, there's no intention to retain jurisdiction over the individual benefits determinations themselves. There's never been any dispute. Okay, so if there turns out being a dispute, as you suggested there might be, over how much back pay they get, how would, theoretically, you proceed in adjudicating that? The workers would proceed to file their grievances in accordance with the stated procedures. That's not an issue. What is an issue is getting them noticed and getting them to the point of being able to get what is due and owing to them and has been for years. That's what the point is. It's a distinction here. And because the JCPA and the WEA apply for the funding but not for the substantive entitlement, that's where the distinction arises. When they get to the state agency and they get a determination of what benefits they should have, if they aren't happy with that, they pursue the state administrative grievances, and that's never been an issue. What the CIT wanted, what we requested and what the court ordered, was that the Department of Labor simply come back to the court when it had done this and show the court that it had completed its job, it had done its job. The court never retained jurisdiction to say, give them $30 more per week. That was never intended. That was not ordered. Given the circumstances of this case, I will acknowledge that the level of specificity and the relief given here is somewhat unusual. So are the circumstances of this case. And that's exactly why we've gotten to this type of an order, given the way we got here with the twists and turns of this entire proceeding. Any more questions? Any more questions, Mr. Gordon? Thank you, Mr. Gordon. You're welcome, Your Honor. Mr. Tresini. Thank you, Your Honor. With respect to a couple of issues. First, with respect to the court's intent when it directed labor to do all of these things, to make these individual benefit determinations and provide basically what are administrative records under seal concerning each benefit determination. Courts don't order government agencies to do stuff like that for no reason. Labor would have been susceptible to contempt proceedings if the court were not pleased with the results of any one of those determinations. Mr. Tresini, what's the status of the primary? I mean, there's this primary claim. Is it just out there pending? Is it gone? Is it included inherently in the order that's before us? What's the status? It's certainly, first, we believe it's gone, and we also believe that it's not included in the order. First, Mr. Gordon alluded to a quotation from the record, and this was last June, the day before the court issued the order that we appealed from. The court stated, Mr. Gordon agrees that the primary determination is mooted because the secondary determination, which you also agree is valid, provides the same relief. Am I correctly stating your position, Mr. Gordon? To which Mr. Gordon stated, yes, your honor. That was the day before the court issued its order. Second. But they were in the alternative, and it was decided in favor of the petitioners. But if, for example, this court should feel that there was some flaw in that, isn't the primary claim revived? It would be pointless and futile to revive the primary claim, because as Mr. Gordon stated, the benefits are the same. It's transparent to the workers. So there's no reason to send the administrative record back to labor to collect additional information and then determine whether the workers should be entitled to benefits as primarily affected workers as opposed to secondarily affected workers. Did they make a product that was in direct competition with imports, or did they make component parts of a product that was in direct competition with imports? At this point, that issue is simply irrelevant to any relief requested. Additionally, the court's order, although granting plaintiff's motion for judgment upon the agency record, under Rule 56-1, when actually challenging a negative primary determination of the Department of Labor, the only remedy available is a remand to the Department of Labor to collect additional information and apply the court's legal construction. None of the other items in that order address anything having to do with the Department of Labor's determination on the record of primary benefits. So those issues taken together make it very clear that the primary determination issue is moved. The decision we're reviewing is a decision solely on secondary benefits. Is that correct? That is absolutely correct. In your position, there's no jurisdiction for that decision? Yes, there's no jurisdiction. I interrupted the answer to your question. If I may, I wish to add one additional point concerning pendant jurisdiction. The Court of International Trade's jurisdiction is limited by the statutes, and there's no analogous statute similar to the supplemental jurisdiction statute that district courts enjoy, 28 U.S.C. 1367. I thought the statute in, whenever it was, 1982, gave the Court of International Trade jurisdiction equivalent, equal to that of the district courts. The Court of International Trade possesses the powers and equity equivalent to those of district courts, but that statute itself does not independently confer subject matter jurisdiction to address any issue. In fact, there's a long line in the Court of International Trade cases holding that, although that issue has not been before this court. And then eight years after— But with respect to pendant jurisdiction or pendant claims, you're saying that in any area in which the pendant claim is not explicitly within the jurisdiction of the Court of International Trade, your position is it should be bifurcated? My position, yes, it should be bifurcated, just as TAA cases are all bifurcated. After labor makes its determination, yes, you're entitled to apply for benefits, or no, the worker group is not allowed to apply for benefits. At that point, everything that occurs through the entire system is either reviewable by district courts, if somebody's challenging a Department of Labor guideline interpreting the statute, or it's reviewable in state courts where there's an independent benefit determination that's at issue. And so, in fact, the system is a trifurcation, not even a bifurcation. That was Congress's intent, and— But you're saying the intent was to split the case. We know that Congress has explicitly said over and over, with respect to the Federal Circuit, for instance, that cases should not be split if there's jurisdiction in the first instance that applies to the claims. However, with respect to the Court of International Trade, its jurisdiction is very limited. It's limited by very specific jurisdictional provisions that— But if they had jurisdiction under NAFTA, as over the primary claim, you're saying, nonetheless, anything that might be pendant to that still has to go to some other court? Yes, and, in fact, I would note that 28 U.S.C. 1367, which provided supplemental jurisdiction to district courts, was enacted in 1990, which was after the Court of International Trade was created. And Congress certainly could have included the Court of International Trade within the purview of the supplemental jurisdiction statute, but it elected not to do so, apparently, because it's not included. Okay. Any more questions? Thank you. Any more questions? Thank you, Mr. Trissini and Mr. Gordon. Case is taken under submission. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.